UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

          v.                                  DECISION AND ORDER
                                                12-CR-111

MARK SELDINAS,

                Defendant.

---

Before the Court are the Government's objections to Magistrate Judge Jeremiah J. McCarthy's Report and Recommendation finding that defendant Mark Seldinas's motion to suppress physical evidence and statements from his November 5, 2011 arrest should be granted. The Court declines to adopt the Magistrate Judge's finding that there was no probable cause to arrest defendant. However, the Court adopts the Magistrate Judge's finding that the Government failed to meet its burden of proof with respect to whether defendant was adequately given his *Miranda* rights. As explained in detail below, defendant's motion to suppress physical evidence and statements is granted in part and denied in part.

## **BACKGROUND AND RELEVANT FACTS**

Defendant is charged with knowingly, intentionally and unlawfully possessing with intent to distribute a Schedule II controlled substance (Oxycodone) and a Schedule IV controlled substance (Alprazolam), in violation of

Sections 841(a)(1), 841(b)(1)(c) and 842(b)(2) of Title 21 of the United States Code.  The charges arise from an incident on November 5, 2011, where defendant allegedly met a confidential source in the parking lot of the Boulevard Mall in Cheektowaga, New York for purposes of conducting a drug sale.  Defendant was arrested at that time and found to be in possession of both Oxycodone and Xanax.  Additional pills were recovered from defendant's vehicle.  The case was referred to Magistrate Judge Jeremiah J. McCarthy pursuant to 28 U.S.C. §636(b)(1) for supervision of all pre-trial proceedings.  Defendant was arraigned on April 17, 2012, at which time he pled not guilty.

On July 17, 2012, defendant moved to suppress physical evidence and statements from the date of his arrest.  Defendant argued that his arrest was undertaken without probable cause and that the statements he made to officers during and after the arrest were involuntary.  A suppression hearing was held before Magistrate Judge McCarthy on October 7, 2013.  Drug Enforcement Agency ("DEA") Special Agent ("SA") Shane Nastoff and DEA Task Force Officer John Trabert testified for the Government.  Defendant did not call any witnesses.  The parties submitted post-hearing briefs and oral argument was held on August 21, 2014.  On October 23, 2014, Magistrate Judge McCarthy issued a Report and Recommendation recommending that defendant's motion to suppress be granted as to the physical evidence and statements.

On December 12, 2014, the Government filed objections to the Report and

Recommendation.[1] Defendant filed a response on January 5, 2015, and oral argument was held on January 15, 2015. Following an additional submission by the Government on January 20, 2015 and a continuation of oral argument on March 18, 2015, the Court considered the matter submitted.

## EVIDENTIARY HEARING TESTIMONY

The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings. *See Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge.") *(quoting Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999)). With respect to the testimony taken at the evidentiary hearing and any disputed issues of fact, this Court adopts the credibility findings of Magistrate Judge McCarthy and finds that another hearing is not necessary. Below is a summary of relevant testimony and factual findings from the hearing.

SA Nastoff testified that prior to defendant's arrest, he was involved in a

---

[1] Initially, the time to file objections expired without a submission from the Government. On November 24, 2014, the Court, based upon a clearly erroneous or contrary to law standard of review, issued an Order adopting the Report and Recommendation. That same day, the Government filed a motion to file untimely objections. During oral argument on November 26, 2014, the Court granted the Government's motion to file untimely objections. In light of the subsequent objections and the instant Decision and Order, the Court's prior Order (Dkt. 72) is revoked.

drug investigation using a confidential source ("CS"). The CS was in contact with an individual in Bronx, New York who was arranging to supply the CS with prescription pills. Specifically, he was to provide 200 Oxycodone pills and 120 Xanax pills to the CS. This individual was not able to travel, so he arranged to have defendant transport the pills to Buffalo.

On November 5, 2011, the CS informed SA Nastoff that he had been in contact with defendant through text messaging, and that defendant and the CS agreed to meet that evening, at a parking lot by the Boulevard Mall in Cheektowaga, New York. The purpose of the meeting was to conduct the drug sale. SA Nastoff testified regarding text messages exchanged between defendant and the CS, and those text messages were entered into evidence at the hearing. In the messages, the CS writes "well I'm in grand island now/ Just give me a bit to change and grab my loot." Defendant replies, "5200 right? 200 jetseys and 120 shirts." Nastoff testified that the CS explained that these messages indicate that he was going to pay defendant $5,200 for the purchase of 200 Oxycodone pills and 120 Xanax pills. Nastoff testified that the CS was fitted with a Kel monitoring device in order to transmit live audio, and the officers followed the CS to the prescribed meeting location. During the drive to the meeting, the CS and defendant confirmed, over the telephone, that they would be meeting at the Michael's parking lot next to the Boulevard Mall.

Officer Trabert testified that he was part of a task force assigned to assist

SA Nastoff in this case. Nastoff instructed Trabert to report to the Michael's parking lot because the DEA "needed extra bodies for surveillance and arrest." Officer Trabert was briefed on the background of the case and was aware that the CS was scheduled to meet defendant. Trabert testified that he positioned his vehicle in order to have a clear view of the CS. Trabert could not hear the surveillance transmission, and instead was relying on Nastoff's communications.

Officer Trabert testified that he observed defendant approach the CS. The two men spoke for about a minute before Trabert and the other agents were given the orders to "approach and arrest." Nastoff testified that it was either he or SA Wisniewski who "gave out the audio transmission of move in and make an arrest." [2] Officer Trabert testified that as he approached defendant to arrest him, he observed defendant drop a plastic "sandwich bag" on the ground. He did not observe the contents of the bag at that time. When Trabert reached defendant, he pushed defendant against the side of his vehicle and placed defendant in handcuffs. Officer Trabert testified that while he was the first to reach defendant,

---

[2] At the hearing, SA Nastoff testified that he overheard defendant, through the Kel monitor, state that he had "200 Oxycodone pills and two prescription bottles." In the Report and Recommendation, Magistrate Judge McCarthy states that he listened to the Kel recording following the hearing and found that defendant never expressly states, on the recording, that he is in possession of the pills. This Court also listened to the Kel recording during oral argument on January 15, 2015, and is in agreement with the Magistrate Judge's assessment of the recording. However, the Government does not rely on the statements in the recording, either in their initial response to defendant's motion or in their objections to the Report and Recommendation, in support of their argument that probable cause existed to arrest defendant. For all of these reasons, the Kel recording has not been considered by the Court in deciding the objections.

other officers were a few steps behind him. Several officers were yelling "DEA, police, don't move, get down." SA Nastoff testified that he approached defendant with his weapon drawn. When Nastoff reached him, defendant was already in the process of being handcuffed. Nastoff testified that he observed a clear "ziplock type bag" containing "multiple pills that were blue in color" at defendant's feet. However, he did not observe defendant drop the bag.

Officer Trabert testified that he advised defendant of his *Miranda* rights shortly after he was taken into custody, and that defendant agreed to waive his rights and speak with police. Trabert testified that he recited the warnings "by heart". Defendant was patted down and additional drugs were found on his person. Defendant was asked if he had any additional contraband, and defendant stated that he had an additional bag of pills in the center console of his vehicle. Both the pills and the vehicle were confiscated by the agents.[3]

Defendant was then taken to the Amherst police department and placed in an interview room where he was interviewed by SA Nastoff, Officer Trabert and SA Wisniewski about his drug trafficking activities. The officers could not recall if defendant was *Mirandized* again prior to questioning at the station. In addition to making statements at the time of this arrest, defendant also provided information about his drug trafficking activities and agreed to cooperate with respect to future investigations.

---

[3] The vehicle was released to defendant's girlfriend later that day.

## **DISCUSSION**

Pursuant to 28 U.S.C. §636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Magistrate Judge McCarthy found that the officers lacked probable cause to arrest defendant. The Magistrate Judge specifically concluded that "since it is not evident from the record when law enforcement observed that [defendant] had dropped a bag *containing pills*–the point at which the government argues reasonable suspicion became probable cause–...the government [failed] to meet its burden of establishing by a preponderance of the evidence that probable cause existed for [defendant's] arrest." The Government objects to this finding. Upon *de novo* review, and after considering the submissions of the parties and hearing oral argument, that Court finds that probable cause did exist to support defendant's arrest.

"Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Gagon*, 373 F.3d 230, 236 (2d. Cir. 2004). "[T]he probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicalities, act. Because the standard is fluid and contextual, a court must

examine the totality of the circumstances of a given arrest." *United States v. Delossantos*, 536 F.3d 155, 159 (2d. Cir. 2008).

In *United States v. Steppello*, a case similar to the matter at bar, the Second Circuit concluded that the district court erred in determining that police lacked probable cause to arrest defendant because the court failed to consider the totality of circumstances known to police and failed to appreciate the reliability of the informant's information. 664 F.3d 359 (2d. Cir. 2011). In *Steppello*, an informant agreed to cooperate with police and identified defendant as a cocaine dealer. *Id*. Officers had the informant call defendant, the informant stated that defendant would arrive at the informant's house with cocaine, and officers arrested defendant after observing him leave his house and travel to the informant's residence. *Id.* In determining that probable cause existed, the Second Circuit noted that the district court should not have discounted the significance of phone calls between the informant and defendant nor should it have discounted the information provided by the informant. *Id*. The Second Circuit also emphasized that it was error for the district court to consider individual facts in isolation, and that the district court failed to "evaluate the facts in light of the training and experience of the arresting agents." *Id*. at 364; *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

In discounting the phone call between defendant and the informant, the district court in *Steppello* noted its brevity, the inability to hear what defendant

said, and the lack of any reference to a drug sale. *Steppello*, 664 F.3d at 364. The Second Circuit disagreed, and found that the investigator, who had been with the state police for 12 years, would have the training and experience to recognize "that the cryptic nature of the call was consistent with other transactions in which drug dealers often engage in a so-called narcotics code." *Id*.; *accord United States v. Velasquez*, 271 F.3d 364, 372 (2d. Cir. 2001). Similarly here, the Court finds that the Magistrate Judge failed to recognize the significance of the text messages exchanged by defendant and the informant, which were received in evidence during the suppression hearing. Not only do the text messages confirm information already provided by the informant such as the date and time of the meeting, but the references to "5200" in exchange for "200 jetseys and 120 shirts" is the type of cryptic and coded language that SA Nastoff, a special agent for the Drug Enforcement Agency, would recognize as narcotics code.

Magistrate Judge McCarthy also erred by failing to consider the information provided by the informant. The Second Circuit has found that in addition to considering an informant's veracity, reliability and basis of knowledge, courts assessing the totality of circumstances should also evaluate "whether the information an informant provides is corroborated by independent police investigation because an informant who is right about some facts is more likely to be right about others." *Gagnon*, 373 F.3d 236. Courts are instructed to "consider such corroboration in evaluating the existence of probable cause even if only an

informant's account of anticipated innocent activities is confirmed." *Id*.; *see Steppello*, 664 F.3d at 366. Here, defendant's actions fully corroborated the information provided by the confidential informant. Defendant arrived at the specific time and place described by the informant. Both officers, who had an opportunity to clearly view defendant and the informant, testified that it was apparent that defendant arrived at the designated location, at the designated time, for purposes of meeting the informant.

Finally, in determining that there was no probable cause to arrest, the Magistrate Judge emphasizes that it is not evidence from the record when law enforcement observed defendant drop a bag containing pills. Magistrate Judge McCarthy notes that Officer Trabert observed defendant drop "what looked like a sandwich bag to the ground" but did not view the contents of the bag. While the Court is in agreement that the dropping of a plastic bag with unknown contents is insufficient to establish probable cause, this fact cannot be considered in isolation. Instead, it must be viewed in a practical and nontechnical light of all of the surrounding circumstances. The police viewed text messages which they believed were code for a drug transaction, defendant arrived at the exact time and place specified by the informant, defendant approached informant and engaged him in conversation, and defendant dropped a plastic bag upon seeing officers approach. *See United States v. Arnold*, 536 Fed. Appx. 9 (2d. Cir. 2013) (recognizing plastic baggies as packaging tools of drug trade); *United States v.*

*Perez*, 144 F.3d 204, 208 (2d. Cir. 1998) (plastic "baggies" are "tools of the trade" for packaging and selling drugs).  Considered in its totality, the Court finds that the situation presented here would justify a person of reasonable caution to believe that a drug sale was being committed by defendant.  Since there was probable cause to arrest defendant, the Court finds no basis to suppress either the bag of pills dropped by defendant or the pills found on defendant's person. *See United States v. Robinson*, 414 U.S. 218 (1973) (an arrestee and everything worn by him may be searched incident to a lawful arrest).

The Government also objects to the Magistrate Judge's finding that the Government failed to meet its burden of proof with respect to the adequacy of the *Miranda* warnings given to defendant.  Upon *de novo* review, and after considering the submission of the parties and hearing oral argument, the Court adopts Magistrate Judge McCarthy's finding as to the adequacy of the *Miranda* warnings.

The Government "bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of the *Miranda* doctrine." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).  Some courts have found that absent specific testimony as to the content of the warnings given or the admission into evidence of the pre-printed *Miranda* card used by the officer in administering warnings, the government fails to meet its burden.  *See Moll v. United States*, 413 F.2d 1233, 1238 (5th Cir. 1969) ("[G]overnment's burden may

11

not be met by presumptions or inferences that when police officers read to an accused from a card they are reading *Miranda* warnings or that what is read, without revelation of its contents, meets constitutional standards."); *United States v. Gilmer*, 793 F. Supp. 1545,1555 (D.Colo. 1992) ("Only with specific testimony can the court decide whether the officers conveyed all of the proper warnings.") Other courts have declined to adopt a bright line rule regarding specific testimony as to the contents of the warnings, however those cases have involved testimony regarding use of a pre-printed or form card. *See United States v. Muniz*, 93 Fed. Appx. 208 (10th Cir. 2004) (declining to suppress statements where arresting officer testified that he read defendant his rights from a "*Miranda* card", produced the card on the stand, and the card was examined by defendant's counsel); *United States v. Magana*, 2007 WL 680784 (D.Nev. 2007) ("Although a mere reference to reading *Miranda* rights is not sufficient evidence, an arresting officer's testimony that he read the *Miranda* warnings from a *Miranda* card has been deemed sufficient evidence.")

     Here, Officer Trabert testified that he administered *Miranda* warnings to defendant "by heart." No testimony was offered regarding the contents of the warnings, nor did Trabert testify that he used any type of government-issued form or card to administer the rights. All of the cases relied on by the Government are readily distinguishable as they involve testimony regarding an officer's use of a pre-printed card. While some courts have found that testimony about the specific

rights provided was not necessary where the officer read from a pre-printed card or there was some other type of evidence as to the adequacy of the warnings, that is not the case here.  During the hearing, the Government, inexplicably, offered only a brief and conclusory statement by Officer Trabert that he administered the *Miranda* warnings "by heart."  Without any testimony as to what rights were told to defendant, or testimony that the officer relied on a pre-printed form or card, the Court has no basis upon which to conclude that defendant was given the proper warnings.  Indeed, this Court has not found one decision, inside or outside of this Circuit, where testimony that the warnings were given by memory was, in and of itself, considered sufficient to sustain the Government's burden of proof as to the adequacy of *Miranda* warnings and voluntary waiver of those warnings by a defendant.

For these reasons, and for the reasons set forth Magistrate Judge McCarthy's Report and Recommendation, defendant's motion to suppress his statements is granted.  In addition, because the pills in the center console of defendant's vehicle were discovered as a direct result of defendant's admissions, those pills are also suppressed.  *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) ("Evidence obtained by exploitation of a primary illegality is regularly excluded under traditional taint analysis as the 'fruit of the poisonous tree'.")

## CONCLUSION

For the foregoing reasons, the Court adopts the Magistrate Judge's

findings with respect to defendant's statements but declines to adopt the Magistrate Judge's findings as to whether probable cause existed to arrest defendant. Defendant's motion to suppress is granted in part and denied in part. Specifically, defendant's statements and the evidence found in the vehicle are suppressed. The remaining physical evidence found in the course of defendant's arrest is admissible.

The parties shall appear before the Court on Thursday, April 23, 2015 at 2:00 p.m. for a meeting to set a trial date.

SO ORDERED.

                                       *Richard J. Arcara*
                                HONORABLE RICHARD J. ARCARA
                                UNITED STATES DISTRICT COURT

Dated:   April 22, 2015